[673 NYS2d 700]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v BRYAN HALE, Respondent.

Second Department, May 26, 1998

## APPEARANCES OF COUNSEL

*James M. Catterson, Jr., District Attorney* of Suffolk County, Riverhead (*Michael J. Miller* of counsel), for appellant.

*David W. Clayton,* Hauppauge, for respondent.

*Dennis C. Vacco, Attorney-General,* New York City (*Barbara G. Billet, Nancy A. Spiegel* and *Julie S. Mereson* of counsel), *pro se, amicus curiae.*

## OPINION OF THE COURT

GOLDSTEIN, J.

At issue here is whether a condition of the defendant's sentence of probation on a prior conviction, which authorized the warrantless search of the defendant's "place of abode", violated the defendant's constitutional or statutory rights. We hold that it did not.

Upon his conviction of criminally negligent homicide and violating Navigation Law § 49-a (2), the defendant was sentenced on March 5, 1996 to five years' probation with alcohol and narcotics conditions, pursuant to a negotiated plea agree-

ment. These additional conditions of probation included, in pertinent part:

"(b) That you permit search of your vehicle and place of abode where such place of abode is legally under your control, and seizure of any narcotic implements and/or illegal drugs found, such search to be conducted by a Probation Officer or a Probation Officer and his agent.

"(c) When ordered by the Probation Department, you are to submit to any recognized tests that are available to the Probation Department to determine whether you have been using drugs".

The defendant signed an acknowledgment that he read and understood the above conditions of probation and agreed to abide by them, which was co-signed by a witness and the sentencing Judge. Thereafter, on March 11, 1996, the defendant's probation officer explained the conditions to the defendant. The defendant appeared to understand the conditions and agreed to abide by them.

As part of his probation, the defendant submitted to several urine tests which were positive for the presence of cocaine derivatives. The defendant was advised by his probation officer, at first orally and then by letter dated December 11, 1996, that he was required to enter an in-patient treatment center.

On January 8, 1997, the mother of the homicide victim informed the defendant's probation officer that the defendant was dealing in drugs, and that her son had purchased drugs at the defendant's house. After consultation with his supervisor, the defendant's probation officer decided to search the defendant's home with the aid of the Southampton Town Police.

On January 9, 1997, the probation officer went to the defendant's place of employment and informed him that "under the conditions of your probation, we have to search your house right away". The defendant accompanied his probation officer to his home and opened the front door for the officer and Southampton Town Police. Guns and cocaine were recovered from the defendant's home, and the defendant made a written statement. The defendant was arrested and charged with criminal possession of a controlled substance in the third degree (two counts), criminal possession of a weapon in the fourth degree, and criminally using drug paraphernalia in the second degree.

The defendant moved to suppress the physical evidence and his statement on the ground that the search of his residence

was a violation of his rights under the United States and New York State Constitutions, and his statutory rights pursuant to CPL 410.50. The defendant contended that the search was invalid "regardless of his prior execution of a consent to search as a condition of probation".

After a hearing, the Supreme Court granted the defendant's application, holding that the condition authorizing a search of the defendant's home without a warrant was contrary to law and the intent of the Legislature expressed in CPL 410.50. We disagree.

In *Griffin v Wisconsin* (483 US 868, 873-874), the United States Supreme Court noted that "A State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry * * * presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements".

■ Probationers enjoy only " 'conditional liberty properly dependent on observance of special [probation] restrictions' " (*Griffin v Wisconsin, supra,* at 874, quoting *Morrissey v Brewer,* 408 US 471, 480). Such conditions could include warrantless searches based upon less than probable cause (*see, Griffin v Wisconsin, supra*). Therefore, that the search of the defendant's premises was effected without a warrant did not violate the defendant's rights under the United States Constitution.

■ Similarly, the New York Court of Appeals has held that the test for determining where a search "was unreasonable and thus prohibited by constitutional proscription must turn on whether the conduct * * * was rationally and reasonably related to the performance of * * * duty" of the parole officer or probation officer in the particular circumstances (*People v Huntley,* 43 NY2d 175, 181; *see, People v Jackson,* 46 NY2d 171, 175). In the instant case, where the probation officer had reasonable cause to believe that the defendant had violated the conditions of his probation, this test was clearly satisfied (*see, People v Johnson,* 63 NY2d 888; *People v Fridell,* 81 AD2d 869).

The primary issue before us is whether the warrantless search deprived the defendant of his statutory rights pursuant to CPL 410.50 (3). Pursuant to CPL 410.50 (1), the probationer is in the "legal custody" of the court which imposed sentence. The Probation Department serves the court which imposed sentence by "supervising the defendant during the period of such legal custody" (CPL 410.50 [2]). CPL 410.50 (3) provides:

"If at any time during the period of probation the court has reasonable cause to believe that the defendant has violated a condition of the sentence, it may issue a search order. Such order must be directed to a probation officer and may authorize such officer to search the person of the defendant and/or any premises in which he resides or any real or personal property which he owns or which is in his possession". This subdivision was drafted in recognition that "the right to order a search of the person and property of a probationer can be an important element in supervising his [or her] activities and protecting the public" (State of NY Temp Commn on Rev of Penal Law and Criminal Code, Proposed New York Criminal Procedure Law, Staff Comment, § 210.30, at 278).

In *People v Jackson (supra),* the Court of Appeals held that, in the absence of any exigent circumstances, the search of a probationer without a court order violated his statutory rights pursuant to CPL 410.50 (3). However, in that case, the sentencing court had not made permission to search a condition of probation. In the instant case, the sentencing court determined, in advance, at sentencing, that authorizing the Probation Department to conduct searches of the defendant's place of abode for drugs or narcotics implements was necessary to supervise his activities.

The Appellate Division, Fourth Department, has generally concluded that imposition of such a search condition is "contrary to law" (*People v Braun,* 177 AD2d 981; *see, People v Grisanti,* 126 AD2d 938; *People v Suttell,* 109 AD2d 249; *but see, People v Baer,* 158 AD2d 1002; *People v Fortunato,* 50 AD2d 38).

Determining whether a condition of probation is "contrary to law" requires analysis of another statutory provision: Penal Law § 65.10, relating to conditions of probation. Pursuant to Penal Law § 65.10 (*1*), a sentencing court may impose such conditions upon probation as it, "in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him to do so". Such conditions include, *inter alia,* requiring the probationer to avoid injurious or vicious habits, to undergo available medical or psychiatric treatment, and participate in an alcohol or substance abuse program (Penal Law § 65.10 [2] [a], [d], [e]).

As the Court of Appeals noted in *People v Letterlough* (86 NY2d 259, 263-264), "because the conditions of probationary sentences must be tailored to the particular defendant's case, and an exhaustive list of behavioral conditions would therefore

have been impossible, the statute includes a catch-all provision which grants the court wide latitude to require the defendant to '[s]atisfy any other conditions *reasonably related to * * * rehabilitation*' (Penal Law § 65.10 [2] [*l*] [emphasis added])". Such conditions "may have incidental punitive and deterrent effects" but must be "fundamentally 'rehabilitative'" (*People v Letterlough, supra,* at 265; *see, People v McNair,* 87 NY2d 772). Where, as here, the defendant's crime "stems from a substance abuse problem, the use of sentencing conditions as a tool of rehabilitation is especially meaningful" (*People v Letterlough, supra,* at 264).

This Court has noted that such conditions may include "consent as a condition of probation, to permit certain types of searches * * * where there is a reasonable belief on the part of the probation officer that it is necessary to properly perform his or her duty" (*People v Brown,* 114 AD2d 1035, 1036). The Appellate Division, Third Department, has held that the general rule enunciated in CPL 410.50 (3) yields when the probationer consents to certain types of searches as a condition of probation (*see, People v Berkley,* 152 AD2d 788, 790, cited with approval in *People v Letterlough, supra,* at 264). However, imposition of such a condition must be "reasonably related to the terms of defendant's probation" (*People v Berkley, supra,* at 790; *People v Brattole,* 170 Misc 2d 1037). Such a condition is considered "reasonably related to the terms of defendant's probation" if there is evidence that, as in this case, the defendant is currently abusing drugs or his use of drugs had an impact on the incident resulting in his criminal conviction (*see, People v Brattole, supra*).

The imposition of search conditions has a deterrent effect on drug use, which, in the case where the defendant has a history of drug abuse, has a rehabilitative effect (*see, State v Turner,* 142 Ariz 138, 688 P2d 1030; *People v Mason,* 5 Cal 3d 759, 488 P2d 630, *cert denied* 405 US 1016; *Luke v State,* 178 Ga App 614, 344 SE2d 452; *State v Gallagher,* 100 NM 697, 675 P2d 429; *State v Morgan,* 206 Neb 818, 295 NW2d 285; *State v Mitchell,* 22 NC App 663, 207 SE2d 263; *State v Perbix,* 331 NW2d 14 [ND]; *State v Age,* 38 Ore App 501, 590 P2d 759; *Macias v State,* 649 SW2d 150 [Tex]; *United States v Schoenrock,* 868 F2d 289; *United States v Consuelo-Gonzalez,* 521 F2d 259). Therefore, under those circumstances, the imposition of such a condition satisfies the rehabilitative requirements of Penal Law § 65.10 (2) (*l*).

■ By accepting this special condition of probation, which was tailored to his individual needs, the appellant waived the

"search order" requirement of CPL 410.50 (3) applicable to probationers not subject to special conditions of probation (*see, People v Bravo,* 43 Cal 3d 600, 738 P2d 336, *cert denied* 485 US 904; *Allen v State,* 258 Ga 424, 369 SE2d 909). Since the defendant knowingly accepted the condition, he had a diminished expectation of privacy in his home (*see, United States v Thomas,* 729 F2d 120, *cert denied* 469 US 846; *Owens v Kelley,* 681 F2d 1362; *State v Turner, supra,* 142 Ariz, at 142, 688 P2d, at 1034; *Macias v State, supra,* at 152).

Finally, we note that the defendant did not challenge the validity of the condition by appealing from his probationary sentence or by moving to vacate his sentence or to modify the conditions (*see,* CPL 440.20, 410.20; *Haynes v State,* 26 Md App 43, 337 A2d 130; *Vale v State,* 486 SW2d 370 [Tex]; *Sanderson v State,* 649 P2d 677 [Wyo]).

Accordingly, the order appealed from is reversed, on the law, and that branch of the defendant's omnibus motion which was to suppress physical evidence and his statement to the police is denied.

THOMPSON, J. P., KRAUSMAN and LUCIANO, JJ., concur.

Ordered that the order is reversed, on the law, and that branch of the defendant's omnibus motion which was to suppress physical evidence and his statement to the police is denied.